Cummings *v.* Stovall.

6L 679
11L 575

## J. F. CUMMINGS *et al. v.* B. L. STOVALL *et al.*

STATUTE OF LIMITATIONS. *Right of action barred. When.* The widow of a decedent entered into a contract in writing with the heirs, by which, in consideration of the surrender by her of her year's support, exempt property and dower, the heirs agreed to convey to her one-third in value of the lands of the estate, and a specific allotment of land was afterwards made to her by parol, of which she took possession, and then married, had a child, and died; the heirs in the meantime, pending the coverture, conveyed the land to the husband, who held under the deed, and, after the death of the wife, sold and conveyed the land to a third person for value, who continued in possession for over ten years, when the heirs of the wife filed this bill for a specific execution of the original contract and for a recovery of the land. *Held,* that the right of action was barred by the statute of limitations.

### FROM OBION.

Appeal from the Chancery Court at Union City. J. SOMERS, Ch.

D. D. & JNO. BELL for complainants.

J. G. SMITH and W. H. SWIGGART for defendants.

COOPER, J., delivered the opinion of the court.

Early in the year, 1860, G. W. Bright died intestate, leaving a widow, Melinda J., and two children, Robert S. Bright and Locky B., then the wife of Robert T. Milner. One B. L. Stovall was appointed and qualified as administrator of his estate. On the 15th of November, 1860, an agreement was entered into between Melinda J. Bright, the widow, on the

one part, and Robert S. Bright and Robert T. Milner. and wife Locky B., and B. L. Stovall, the administrator, on the other part, which was reduced to writing, signed by the parties and registered. By this instrument, it is agreed, in consideration of the surrender by Melinda J. of her right to a year's support, and her right to exempt property, and of her dower in the lands of the deceased, that the two children, Robert S. Bright and Locky B. Milner, would convey to the said Melinda J. Bright one-third in value of the lands of the estate, and one-third of the personal property after the payment of debts, and that the administrator shall sell at once enough of the personal property, including slaves, to pay the debts. The administrator did, in pursuance of the agreement, sell property and pay the debts, and afterwards gave to the widow and each of the children one third of the residue of the personalty. Subsequently, three commissioners were selected by the parties to divide the lands between the widow and children, and they did allot to the widow a particular tract of land, described by metes and bounds, containing one hundred acres. This tract was thenceforward recognized by the children as the property of Melinda J. Bright, and was controlled and used by her as her property, although no deed of conveyance to her was ever executed by the children, as had been stipulated in the agreement. In the year 1861, Melinda J. intermarried with B. L. Stovall, the administrator, by whom she had one daughter, who, however, died, leaving her parents surviving.

After his intermarriage with Melinda J., Stovall purchased the one hundred acres set apart to his wife as above, and received a deed thereto from Robert S. Bright and R. T. Milner and wife, reciting a consideration of $1,000 in cash paid by him, and concluding with a special warranty. This deed was dated December 3, 1862, and was registered in 1878. In 1865, Melinda J. Stovall died, leaving as her only heirs, Eliza, the wife of J. W. White, and Sarah, the wife of J. F. Cummings, her sisters. On the 23d of May, 1867, B. L. Stovall sold and conveyed the tract of land of one hundred acres to Thomas B. Shores, for the consideration of $1,400, by deed with general warranty, which was duly proved, and registered on the 1st of September, 1867. Shores has been in the continuous possession of the land since then, claiming it as his own.

This bill was filed on July 6, 1878, by J. W. White and wife and J. F. Cummings and wife, as the heirs of Melinda J. Stovall, against Robert S. Bright, R. T. Milner and wife, B. L. Stovall and Thomas B. Shores, for the specific execution of the agreement of the 15th of November, 1860, and to have the rights of the complainants in the tract of land declared. The chancellor sustained the demurrer to the bill, one ground of which was the failure of the complainants to file the agreement and deeds relied on in the bill or copies thereof, and refused the subsequent motion of the complainants for leave to file and make part of the record the agreement and deeds mentioned. The complainants appealed.

The contract of October 15, 1860, according to the bill, was that the two children of G. W. Bright should convey " one-third in value of the lands of the estate." Such a contract was void as to Locky B. Milner, one of these children, who was then a married woman: *Gillespie* v. *Worford*, 2 Cold., 632. The right of action on the contract commenced, it is clear from the recitals of the bill, before the intermarriage of Melinda J. with Stovall, and has long since been barred by the statute of limitations and lapse of time. And it would clearly be inequitable, after such a lapse of time, and under the circumstances developed in the record, for a court of chancery to undertake to specifically execute the contract as against the children of G. W. Bright, even if the statute of limitations were out of the way.

The bill says that Stovall, after his marriage with the widow, received a deed to the land in controversy from Robert S. Bright and Milner and wife, reciting a consideration of $1,000, which was duly registered. If, in fact, the consideration recited was paid by Stovall, it is clear that no resulting trust arose in favor of his wife. At most, there might be a constructive trust arising out of his knowledge of his wife's rights under the contract, on which the statute of limitations would begin to run from the taking of the title, saving to her, or her heirs, the right of action for three years after disability removed, and whatever independent right of action may have accrued to her heirs at her death has long since been barred by the statute: Code, secs. 2757, 2763; *Haynie* v. *Hall*, 5 Hum., 290.

Upon the bill as framed, the chancellor's decree is correct.

It is suggested by the counsel of complainants, and is probably the truth, that the conveyance by the Bright heirs to Stovall was in fulfillment of their contract with his wife, and therefore based upon the consideration of the contract which passed from her. If the fact be conceded as claimed, the result would not be changed. The consideration passing from the wife consisted of personalty, her year's support and exempted property, and of the value of her dower in her late husband's lands. Her interest in the personalty would have passed to Stovall upon their intermarriage, and even if separate estate, might be given to him by her: *Jackson* v. *Rutledge*, 3 Lea, 628. So of the proceeds of her dower in the absence of any agreement to the contrary: *Chester* v. *Greer*, 5 Hum., 26. This was what in effect was done. The conveyance was made to the husband, doubtless, with her consent, and at any rate there is no allegation in the bill to the contrary. *Prima facie*, the conveyance to the husband upon a consideration passing from the wife would create a resulting trust in her favor, which might be rebutted. And the statute of limitations will run against a resulting trust as any other trust arising by implication of law: *Earles* v. *Earles*, 3 Head, 367; *Chaney* v. *Moore*, 1 Cold., 48; *Haynes* v. *Swann*, 6 Heis., 560. Of course, the statute would not run during the period of the joint possession of the husband and wife: *McCammon* v. *Pettitt*, 3 Sneed, 242. But it would begin to run as soon as that joint pos-

session ceased, and the bar of the statute in this case has long since attached. If the original contract with the wife had conveyed to her the specific property, or had operated as a bond for title to the particular tract, the result might have been different. For, then, the wife would have acquired an interest in the land which could not have been parted with except in the mode prescribed by the statute for conveyances by *femes covert,* and the husband's estate by the curtesy acquired in that interest by the birth of a child would have prevented the heirs of the wife from suing until after his death: *McCorry* v. *King,* 3 Hum., 267.

In this view, if the original agreement and the deeds referred to in the bill differed in any material respect from the statements of the bill, it was incumbent upon the complainant to have asked leave to amend his bill in accordance with the fact, or to have made the instruments a part of the record by bill of exceptions, in order to put the chancellor in error in his rulings. And, perhaps, the entertaining of the application, after a decision upon the demurrer, was a matter resting in the sound discretion of the chancellor, which this court would not revise except in a clear case of abuse. It is almost certain, moreover, that the instruments are correctly described in the bill, and no amendment would avail anything.

Affirm the decree with costs.